Patricia CHEW, Individually and as Administratrix of the Estate of Daren Chew, deceased and William Chew, Plaintiffs–Appellants,

v.

Bent DIETRICH, Defendant–Appellee.

No. 730, Docket 97–7476.

United States Court of Appeals, Second Circuit.

Argued Oct. 20, 1997.

Decided April 1, 1998.

John A. Ciraldo, Perkins, Thompson, Hinckley & Keddy (David B. McConnell, on the brief), Portland, ME, for Appellants.

Cary R. Wiener, Kirlin, Campbell & Keating (Brett M. Popolow, Richard H. Sommer, on the brief), New York City, for Appellee.

Before: WINTER, Chief Judge, MESKILL, Circuit Judge, and MARTIN,* District Judge.

MARTIN, District Judge:

When Daren Chew agreed to sail in a race from Newport, Rhode Island to Bermuda as a member of the crew on a yacht owned by Bent Dietrich, the Due Process Clause of the United States Constitution was no doubt the furthest thing from their minds. Yet, as a result of Chew's tragic death on the return voyage and his parents' subsequent suit against Dietrich, this Court must explore the limits of the Due Process Clause to determine whether Dietrich, a German citizen residing in Hamburg, Germany, had sufficient contacts with the United States so that its courts may exercise personal jurisdiction over him.

## I. FACTS

In the summer of 1994, Dietrich entered his yacht S/V RAINBOW in the Newport to Bermuda race. Earlier in the year, the yacht had been in Florida undergoing repairs under the supervision of Robert Sharkey, whom Dietrich had hired as boatsman. After the repairs were completed, Sharkey, Dietrich, and some of Dietrich's friends

---

* Hon. John S. Martin, Jr. of the United States District Court for the Southern District of New York, sitting by designation.

sailed the boat up the East Coast, stopping at the Chesapeake Bay for some additional repairs, and then on to Newport for the race.

When the RAINBOW arrived in Newport, additional people were needed to complete the nine person crew for the race. According to Dietrich, Sharkey made it known that they were looking for additional crew members and, as a result, Chew joined them. There is no evidence that anyone but Sharkey was paid anything for serving on the crew, although Dietrich did pay for hotel rooms and some meals for the crew while they were in Bermuda. In addition, Dietrich paid the airfare back to the United States for at least one of the crew members.

At the time the yacht left Newport, it was Dietrich's intent to bring it back to Newport with some of the same crew members. There is some dispute between the parties concerning Chew's original plans for his return to the United States. In any event, after the boat arrived in Bermuda, Sharkey decided not to make the return trip to Newport, and Dietrich asked Chew to serve as skipper on the return voyage. During that voyage, the boat encountered heavy seas and Chew was swept overboard in international waters. Chew's body was never recovered.

## II. PROCEDURAL HISTORY

In December 1995, Chew's parents commenced this action against Dietrich in the Southern District of New York. The record does not indicate how Dietrich, a citizen and resident of Germany, was served—an affidavit of service was never filed. Although the defendant's answer asserted a claim that he was not properly served, that contention was abandoned.

Dietrich moved to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, but agreed that the action could proceed in New York if he was subject to personal jurisdiction in either New York or Rhode Island.[1] Plaintiffs agreed that Dietrich was not sub-

ject to personal jurisdiction in New York but argued that he was subject to personal jurisdiction in Rhode Island. Thus, the parties argued to the District Court that the issue was one of Rhode Island law and cited various cases from the Rhode Island District Court and the First Circuit on the question whether Dietrich's contacts with Rhode Island were sufficient to warrant the exercise of personal jurisdiction.

The District Court recognized that Rhode Island's long-arm statute authorizes the exercise of personal jurisdiction to the full extent permitted under the Constitution. Since there was no relevant Rhode Island case law on the issue, the District Court focused its opinion "on First Circuit authority, since that is the body of precedent that would have been applied had plaintiffs brought suit in the District of Rhode Island." *Chew v. Dietrich*, No. 95 Civ. 10201, 1997 WL 124114, at *3 n. 4 (S.D.N.Y. Mar. 18, 1997) (citing *Aerogroup Int'l, Inc. v. Marlboro Footworks, Ltd.*, 956 F.Supp. 427, 436 n. 14 (S.D.N.Y.1996)). The District Court then carefully analyzed the First Circuit authorities and concluded that in order to sustain personal jurisdiction, the First Circuit generally requires a proximate causal nexus between the defendant's acts within the state and the plaintiff's injury. *Id.* at *3. The District Court, however, recognized that some federal courts have adopted a broader "but for" standard for determining whether the defendant's acts in the forum state are sufficient to support the exercise of personal jurisdiction and that the First Circuit has adopted a similar standard in cases arising from commercial activities within the state. Id. at *3–4. After concluding that the First Circuit would require a proximate causal nexus in a case such as this, the District Court found that the recruiting of Chew to serve on the crew of the RAINBOW was not a proximate cause of his death on the high seas and granted the motion to dismiss. This appeal follows.

---

**1.** Dietrich, in the alternative, moved for dismissal on forum non conveniens ground on the basis that German law was applicable to the action, and for partial summary judgment on the basis that the Jones Act, 46 U.S.C. app. § 688 (1994),

did not apply because no employer-employee relationship existed between Dietrich and Chew. Because the District Court granted Dietrich's motion to dismiss for lack of personal jurisdiction, it did not decide either of these issues.

## III. DISCUSSION

Our analysis of the question of personal jurisdiction over Dietrich starts from a premise different from that of the court below. The District Court accepted the assertion of the parties that it could exercise personal jurisdiction over Dietrich only if Rhode Island would exercise such jurisdiction. However, plaintiffs assert federal subject matter jurisdiction under the Jones Act, 46 U.S.C. app. § 688 (1994), the Death on the High Seas Act, 46 U.S.C. app. §§ 761–768 (1994), and general federal maritime law. When a complaint asserts federal jurisdiction, Rule 4 of the Federal Rules of Civil Procedure now "extends the reach of federal courts to impose jurisdiction over the person of all defendants against whom federal law claims are made and who can be constitutionally subjected to the jurisdiction of the courts of the United States." Purposes of Revision, Advisory Committee Notes, 1993 Amendments.

Rule 4(k) provides, in relevant part:

(1) Service of a summons or filing a waiver of service is effective to establish jurisdiction over the person of a defendant

 (A) who could be subjected to the jurisdiction of a court of general jurisdiction in the state in which the district court is located, or

 . . . .

(2) If the exercise of jurisdiction is consistent with the Constitution and laws of the United States, serving a summons or filing a waiver of service is also effective, with respect to claims arising under federal law, to establish personal jurisdiction over the person of any defendant who is not subject to the jurisdiction of the courts of general jurisdiction of any state.

Fed.R.Civ.P. 4(k).

As noted above, the record does not indicate how Dietrich was served with process.[2] Since he abandoned any claim of improper service in the District Court, we must proceed on the basis that he was properly served.[3] Consequently, the only question

**2.** Moreover, the record is silent on how the parties decided to proceed on the assumption that Rhode Island law governed the due process issue raised.

**3.** Since no question has been raised concerning the method of service of the complaint, there is no need for us to resolve the question of the extent to which federal jurisdiction may be limited in cases where federal claims are asserted but service is effected using the forum state's long-arm statute.

Prior to the 1993 amendments of Rule 4, there had been a split of authority on the question whether the issue of personal jurisdiction presented a question of state or federal law, when a federal claim was asserted but service was effected pursuant to the law of the state in which the district court was located. See generally *United Rope Distribs., Inc. v. Seatriumph Marine Corp.*, 930 F.2d 532, 535–36 (7th Cir.1991). The First, Third, Fifth, Ninth, and Eleventh Circuits stated that when assessing the constitutionality of an assertion of personal jurisdiction in a case arising under federal law where service of process had been made using a method authorized by state law, the federal court could exercise personal jurisdiction only if the defendant had sufficient contacts with the forum state to satisfy the Fourteenth Amendment's due process standard. See, e.g., *United Elec., Radio and Mach. Workers of Am. v. 163 Pleasant Street Corp.*, 960 F.2d 1080, 1086–87 (1st Cir.1992); *Max Daetwyler Corp. v. R. Meyer*, 762 F.2d 290, 295–97 (3d Cir.1985); *DeMelo v. Toche Marine, Inc.*, 711

F.2d 1260, 1264–69 (5th Cir.1983); *Point Landing, Inc. v. Omni Capital Int'l, Ltd.*, 795 F.2d 415, 423–427 (5th Cir.1986), aff'd. sub nom., *Omni Capital Int'l v. Rudolf Wolff & Co.*, 484 U.S. 97, 108 S.Ct. 404, 98 L.Ed.2d 415 (1987); *In re Damodar Bulk Carriers, Ltd.*, 903 F.2d 675, 679 n. 5 (9th Cir.1990); *Cable/Home Communication Corp. v. Network Prod., Inc.*, 902 F.2d 829, 855–56 & n. 39 (11th Cir.1990).

The Sixth and Seventh Circuits expressed the view that in a federal question case, the former Rule 4(e) did not call for the due process analysis based on the Fourteenth Amendment. Rather, the Due Process Clause of the Fifth Amendment controlled and all of the defendant's contacts with the United States could be considered. See, e.g., *Handley v. Indiana & Michigan Elec. Co.*, 732 F.2d 1265, 1268–72 (6th Cir.1984); *United Rope Distribs., Inc. v. Seatriumph Marine Corp.*, 930 F.2d 532, 535–36 (7th Cir.1991); *In re Oil Spill by Amoco Cadiz Off Coast of France on March 16, 1978*, 954 F.2d 1279, 1294 (7th Cir. 1992). See also *DeJames v. Magnificence Carriers, Inc.*, 654 F.2d 280, 292 (3d Cir.1981) (Gibbons, J. Dissenting).

Ultimately, the issue was decided by the Supreme Court in *Omni Capital Int'l v. Rudolf Wolff & Co.*, 484 U.S. 97, 108 S.Ct. 404, 98 L.Ed.2d 415 (1987), which adopted the majority view that state law governed the question of personal jurisdiction even in a federal question case.

In response to the Supreme Court's decision in *Omni*, Rule 4 was amended in 1993, and the language, "under the circumstances," which had

that remains is whether his contacts with either Rhode Island or the United States are sufficient to support the exercise of personal jurisdiction.

Even if we were to assume in this case that the District Court was correct in holding that Rhode Island would not exercise personal jurisdiction over Dietrich, there still is jurisdiction over him pursuant to Rule 4(k), provided that such exercise of jurisdiction satisfies the Fifth Amendment due process standard.

 The principles to be applied in determining the due process limits on personal jurisdiction were set forth in a recent decision of this Court:

> The due process clause of the Fourteenth Amendment permits a state to exercise personal jurisdiction over a non-resident defendant with whom it has "certain minimum contacts ... such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Calder v. Jones*, 465 U.S. 783, 788, 104 S.Ct. 1482, 1486, 79 L.Ed.2d 804 (1984) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 342, 85 L.Ed. 278 (1940) and *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)). In determining whether minimum contacts exist, the court considers "the relationship among the defendant, the forum, and the litigation." *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790 (1984) (quoting *Shaf-*

*fer v. Heitner*, 433 U.S. 186, 204, 97 S.Ct. 2569, 2579, 53 L.Ed.2d 683 (1977)).

> . . . .

> To establish the minimum contacts necessary to justify "specific" jurisdiction, the [plaintiff] first must show that [his] claim arises out of or relates to [defendant's] contacts with [the forum state]. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984). The [plaintiff] must also show that [the defendant] "purposefully availed" [himself] of the privilege of doing business in [the forum state] and that [the defendant] could foresee being "haled into court" there. See *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985).

> If the [plaintiff] satisf[ies] these requirements, the court also considers whether the assertion of jurisdiction "comports with 'traditional notions of fair play and substantial justice'—that is, whether it is reasonable under the circumstances of a particular case." *Metropolitan Life Ins. Co. v. Robertson–Ceco Corp.*, 84 F.3d 560, 568 (2d Cir.), cert. denied, ── U.S. ──, 117 S.Ct. 508, 136 L.Ed.2d 398 (1996) (quoting *International Shoe*, 326 U.S. at 316, 66 S.Ct. at 158); see also Ticketmaster–New York, Inc. v. Alioto, 26 F.3d 201, 206 (1st Cir.1994).

Chaiken v. VV Pub. Corp., 119 F.3d 1018, 1027 (2d Cir.1997).[4]

---

been critical to the majority view analysis of Rule 4(e), was eliminated from the rule. See, e.g., 4 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1075 at 494–95 (2d ed. 1987 & Supp.1997). Subdivision 4(k)(2) was also added to the rule at that time. See Advisory Committee Notes, 1993 Amendments, Subdivision (k).

Given the nature of the changes to Rule 4, a strong argument can be made that even where service is made under the forum state's long-arm statute, a federal court may exercise personal jurisdiction as long as such exercise is consistent with the Fifth Amendment due process standard. But see 4 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1067.1 at 97 (Supp.1997). Since this case does not require us to resolve the issue, we will leave that to another day.

**4.** Although Chaiken involved a Fourteenth Amendment analysis, the due process analysis is basically the same under both the Fifth and Fourteenth Amendments. The principal difference is that under the Fifth Amendment the court can consider the defendant's contacts throughout the United States, while under the Fourteenth Amendment only the contacts with the forum state may be considered. Compare, e.g., *Amoco Cadiz*, 954 F.2d at 1294 ("When the national sovereign is applying national law, the relevant contacts are the contacts between the defendant and the sovereign's nation."), *Eskofot A/S v. E.I. Du Pont De Nemours & Co.*, 872 F.Supp. 81, 87 (S.D.N.Y.1995) (stating that defendant must have sufficient contacts with the United States, when personal jurisdiction is exercised pursuant to Rule 4(k)(2)), *SEC v. Carrillo*, 115 F.3d 1540, 1544 (11th Cir.1997), *World Tanker Carriers Corp.*

While these principles are generally accepted, conflicts have developed in applying them to specific factual situations. In particular, as the District Court noted, there appears to be a split in the Circuits on the standard to be applied in determining if a tort claim "relates" to the defendant's activities within the state. Some Circuits have held that in order for the defendant to be subject to the jurisdiction of a state the conduct within the state must be a proximate cause of the plaintiff's injury. See, e.g., *Pizarro v. Hoteles Concorde Int'l, C.A.*, 907 F.2d 1256, 1259 (1st Cir.1990); *Nowak v. Tak How Investments, Ltd.*, 94 F.3d 708, 714–15 (1st Cir.1996), cert. denied, —— U.S. ——, 117 S.Ct. 1333, 137 L.Ed.2d 493 (1997); *Sybaritic, Inc. v. Interport Int'l, Inc.*, 957 F.2d 522, 524–25 (8th Cir.1992). Others have held that it is sufficient if the defendant's conduct in the state is a "but for" cause of the plaintiff's injury. See, e.g., *Shute v. Carnival Cruise Lines*, 897 F.2d 377, 381–86 (9th Cir.1990), rev'd on other grounds, 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991); *Deluxe Ice Cream Co. v. R.C.H. Tool Corp.*, 726 F.2d 1209, 1216 (7th Cir.1984); *Creech v. Roberts*, 908 F.2d 75, 80 (6th Cir.1990).

We do not believe that this dichotomy is as stark as it may at first appear. It must be remembered that the relatedness test is but a part of a general inquiry which is designed to determine whether the exercise of personal jurisdiction in a particular case does or does not offend "traditional notions of fair play and substantial justice." *International Shoe*, 326 U.S. at 316, 66 S.Ct. at 158 (citation and internal quotation marks omitted). That analysis involves a consideration of "the relationship among the defendant, the forum, and the litigation." *Shaffer*, 433 U.S. at 204, 97 S.Ct. at 2579. Where the defendant has had only limited contacts with the state it may be appropriate to say that he will be

subject to suit in that state only if the plaintiff's injury was proximately caused by those contacts. See *Gelfand v. Tanner Motor Tours, Ltd.*, 339 F.2d 317, 321–22. (2d Cir. 1964).[5] Where the defendant's contacts with the jurisdiction that relate to the cause of action are more substantial, however, it is not unreasonable to say that the defendant is subject to personal jurisdiction even though the acts within the state are not the proximate cause of the plaintiff's injury.

This type of distinction appears to have been recognized even in the First Circuit which, by its own assessment, is considered to be one of the strongest proponents of the proximate cause test. See *Nowak*, 94 F.3d at 715–16.

In *Nowak*, the First Circuit reiterated its general commitment to the proximate cause test but did not apply it to the facts presented. There, the plaintiff's decedent had drowned in a pool at a hotel operated by the defendant in Hong Kong. Even though the defendant's solicitation of business in Massachusetts was not the proximate cause of the drowning, the First Circuit held that the defendant's activities within the state were sufficient to sustain personal jurisdiction, stating that "we are persuaded that strict adherence to a proximate cause standard in all circumstances is unnecessarily restrictive." *Id.* at 715. The court further noted that "flexibility is necessary in the jurisdictional inquiry: relatedness cannot merely be reduced to one tort concept for all circumstances." *Id.* at 716. The court then stated that "the relatedness requirement ... authorizes the court to take into account the strength (or weakness) of the plaintiff's relatedness showing in passing upon the fundamental fairness of allowing the suit to proceed." *Id.* (quoting *Ticketmaster*, 26 F.3d at

---

*v. MV Ya Mawlaya*, 99 F.3d 717, 723 (5th Cir. 1996), with, e.g., *Max Daetwyler*, 762 F.2d at 295–97 (limiting relevant contacts to the contacts between the defendant and the forum state in its Fourteenth Amendment due process analysis), *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 623 (4th Cir.1997) (stating that in a Fourteenth Amendment due process analysis, the court is to examine defendant's contacts with the forum state).

5. While the District Court cites *Gelfand* as a case adopting the proximate cause test, the *Gelfand* opinion makes no reference to such a test and merely indicates that the Court was not willing to uphold personal jurisdiction on the "slender grounds" presented there. See *id.* at 321–22. Moreover, the Court in *Gelfand* was applying New York law, which limited jurisdiction to "a cause of action arising from" business transacted within the state. *Id.*

207 (internal quotation marks omitted; alteration in original)).

We do not have to decide whether the court below was correct in predicting that the First Circuit would adhere to the proximate cause test in this case, since we are at liberty to decide for ourselves what the Due Process Clause requires to sustain personal jurisdiction. See, e.g., *Menowitz v. Brown,* 991 F.2d 36, 40 (2d Cir.1993); *In re Korean Air Lines Disaster of Sept. 1, 1983,* 829 F.2d 1171, 1174 (D.C.Cir.1987) (Ruth B. Ginsburg, J.), aff'd. on other grounds sub nom., *Chan v. Korean Air Lines, Ltd.,* 490 U.S. 122, 109 S.Ct. 1676, 104 L.Ed.2d 113 (1989). But see *Eckstein v. Balcor Film Investors,* 8 F.3d 1121, 1127–28 (7th Cir.1993).

■ In our view, Dietrich's contacts with Rhode Island are alone sufficient to sustain the exercise of personal jurisdiction over him under the Due Process Clause. This case does not arise from a single act of Dietrich in Rhode Island. Dietrich entered Rhode Island intending to assemble a crew for a round-trip voyage to Bermuda. While he may not have recruited Chew personally, the person who did was acting on his behalf. At the time the yacht left Rhode Island for Bermuda, Dietrich intended to return to Rhode Island with many of the same crew members. In these circumstances, it "does not offend traditional notions of fair play and substantial justice" to hold that Dietrich may be sued in Rhode Island by the estate of someone who joined the ship in Rhode Island and died during the round-trip voyage. See *International Shoe,* 326 U.S. at 316, 66 S.Ct. at 158 (citation and internal quotation marks omitted). Whether or not Chew or Dietrich intended that Chew would return to Rhode Island on the RAINBOW when they set sail for Bermuda does not add or detract from the fact that Dietrich knew he would be returning with most of the crew. Dietrich could reasonably anticipate that he might be "haled into court" in Rhode Island to respond to a suit to recover damages for injuries that crew members recruited in Rhode Island might suffer during the round-trip voyage. See *World–Wide Volkswagen,* 444 U.S. at 297, 100 S.Ct. at 567.

Moreover, as noted above, since the question of personal jurisdiction is one of federal law, we are free to consider all of Dietrich's contacts with the United States in deciding whether the exercise of personal jurisdiction is proper. Since the accident at issue arose from the operation of a yacht that had been maintained and used in the United States exclusively for several months prior to the race, it is not unfair to Dietrich to require him to respond to a suit in the United States that relates to the operation of the yacht and concerns injuries to a crew member recruited in the United States.

We believe that the same result would be reached if Rhode Island law were to be applied. Rhode Island's long-arm statute provides:

> every individual not a resident of this state ... that shall have the necessary minimum contacts with the state of Rhode Island, shall be subject to the jurisdiction of the state of Rhode Island ... in every case not contrary to the provisions of the constitution or laws of the United States.

R.I. Gen. Laws § 9–5–33(a) (1985). The Supreme Court of Rhode Island has held that "the scope of our long-arm statute is coextensive with federal constitutional limits on personal jurisdiction." *Messier v. Belisle,* 640 A.2d 959, 960 (R.I.1994) (citations omitted). See also *McKenney v. Kenyon Piece Dye Works, Inc.,* 582 A.2d 107, 108 (R.I.1990).

Although we have found no Rhode Island case dealing with the precise question presented here, the Supreme Court of Rhode Island has stated:

> [The] inquiry regarding minimum contacts turns on whether the cause of action arises out of the defendant's contacts with the forum. If a defendant's conduct does provide the basis for the litigation, all that need be shown for jurisdiction to be proper is a "relationship among the defendant, the forum, and the litigation."

*Id.* (quoting *Ben's Marine Sales v. Sleek Craft Boats,* 502 A.2d 808, 812 (R.I.1985) & *Helicopteros,* 466 U.S. at 414, 104 S.Ct. at 1872).

In addition, the decision in *Ben's Marine* indicates that the Supreme Court of Rhode Island is willing to extend personal jurisdiction as far as the United States Constitution will permit. In that case, the court upheld

jurisdiction over a California boat manufacturer in a suit based on a contract for the sale of a boat negotiated in Chicago between the manufacturer and plaintiffs, Rhode Island residents. The court stated that the manufacturer, who delivered the boat to Rhode Island and accepted payment for the boat there, "should reasonably have expected that it might be 'haled into court' far from its home base in California as a result of such activity." *Ben's Marine,* 502 A.2d at 815 (quoting *World–Wide Volkswagen,* 444 U.S. at 297, 100 S.Ct. at 567).

Given Rhode Island's expansive approach to the issue of personal jurisdiction, we do not doubt that the Supreme Court of Rhode Island would find that the substantial relationship between Dietrich's contacts with Rhode Island and Chew's death was more than sufficient to sustain personal jurisdiction over Dietrich in this case.

### IV. CONCLUSION

For the foregoing reasons the judgment of the District Court is reversed and the case is remanded.