**In re Stephen John WILLIAMS, Debtor.**

**Stephen John Williams, Plaintiff,**

**v.**

**Law Society of Hong Kong, Herbert Hak–Kong Tsoi, Patrick Moss, Privacy Commissioner for Personal Data, Stephen Lau Ka–men, Eric Pun, Tony Lam, Deacons, Graham & James, Kevin Bowers, Jonathan Harris and Mimi Leung, Defendants.**

**Bankruptcy No. 00–21672. Adversary No. 00–2071.**

United States Bankruptcy Court, D. Connecticut.

June 28, 2001.

Stephen John Williams, Storrs, CT, pro se.

Robert E. Kaelin, Murtha Cullina, LLP, Hartford, CT, for defendants except Graham & James.

## *RULING ON CERTAIN DEFENDANTS' MOTION TO DISMISS ADVERSARY PROCEEDING FOR LACK OF PERSONAL JURISDICTION*

ROBERT L. KRECHEVSKY,
Bankruptcy Judge.

### I.

#### *ISSUE*

Stephen John Williams ("Williams"), on June 14, 2000, filed in this court a Chapter 13 petition without schedules, a proposed plan, or a statement of financial affairs. On July 10, 2000, Williams filed a complaint against the Law Society of Hong Kong, Herbert Hak–Kong Tsoi, Patrick Moss, Privacy Commissioner for Personal Data, Stephen Lau Ka–men, Eric Pun, Tony Lam, Deacons, Graham & James, Kevin Bowers, Jonathan Harris and Mimi Leung, all of whom, except Graham & James,[1] resided in Hong Kong (together, except for Graham & James, the "Hong Kong defendants"). The complaint seeks damages, pursuant to Bankruptcy Code § 362(h),[2] for the defendants' asserted violation of the automatic stay imposed by § 362(a) upon the filing of a bankruptcy petition.

█ The Hong Kong defendants have appeared by counsel and filed the instant motion to dismiss the complaint on various grounds pursuant to Fed.R.Civ.P. 12(b)(1) and (2), made applicable in bankruptcy proceedings by Fed.R.Bankr.P. 7012(b). By agreement of the appearing parties, the sole issue for decision in this ruling is whether the court lacks personal jurisdiction over the Hong Kong defendants.[3] The basis for the background that follows includes the motion hearing held on April 20, 2001, and the affidavits, pleadings, briefs, and other papers filed by the parties.

### II.

#### *BACKGROUND*

Williams, an attorney, then present in or a resident of Hong Kong, from December, 1998 through August, 1999, filed three separate complaints with the Hong Kong Privacy Commissioner for Personal Data ("the Commissioner"), alleging violations of Williams' data access requests, pursuant to the Hong Kong Personal Data (Privacy) Ordinance, CAP. 486 (Def.Ex.A). He complained that three Hong Kong entities— the Law Society of Hong Kong ("the Law Society"), the Director of Immigration, and the Secretary of Security failed to provide him with the data requested in the time and manner prescribed by the ordinance. The Commissioner dismissed the complaints[4] and Williams, between October 26, 1999 and January 14, 2000, filed appeals of these rulings to the Hong Kong Administrative Appeals Board ("the AAB"). On

---

1. Graham & James is a United States law firm.

2. 11 U.S.C. § 362(h) provides:
   (h) An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

3. The court may consider the question of personal jurisdiction prior to its consideration of whether it has subject matter jurisdiction. *Ruhrgas AG v. Marathon Oil Co.,* 526 U.S. 574, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999).

4. With one minor exception, not relevant to the matter at hand.

May 6, 2000, Williams notified the AAB that he was abandoning all three appeals.

The Administrative Appeals Board Ordinance, CAP. 442 (Def.Ex. A), provides in relevant part:

21. Conduct of proceedings

(1) For the purposes of an appeal, the Board may—

. . .

(k) subject to section 22, make an award to any of the parties to the appeal of such sum, if any, in respect of the costs of and relating to the appeal;

. . . .

22. Provision relating to cost and witness expenses

(1) The Board shall only make an award as to costs under section 21(1)(k)—

(a) against an appellant, if it is satisfied that he has conducted his case in a frivolous or vexatious manner; and

(b) against any other party to the appeal, if it is satisfied that in all the circumstances of the case it would be unjust and inequitable not to do so.

Mimi Leung, a defendant and Secretary of the AAB ("Leung"), on May 16, 2000, wrote to the Commissioner and the Law Society asking whether they sought to recover their costs. Both responded that they did seek costs and the Commissioner, on May 17, 2000, and the Law Society, on May 24, 2000, filed the required materials with the AAB. The AAB scheduled a hearing on the issue of costs for June 15, 2000 at 9:30 a.m. Leung, on May 17, 2000, mailed to Williams at his Connecticut address a letter notifying him of the hearing and his right to appear either in person or by representative, and requiring that he file with the AAB, before June 1, 2000, a "skeleton submission" of his position. Williams neither filed the requested submission nor appeared. Instead, he filed his Chapter 13 petition and faxed a letter to defendant Kevin Bowers ("Bowers") at Deacons, the Hong Kong law firm representing the Law Society, informing him that Williams had filed a bankruptcy petition and that, "All proceedings before the Administrative Appeals Board must be immediately discontinued. Any further action whatsoever, including even scheduling or rescheduling a matter, would be a violation of the stay." (Ex. D, Debtor's Letter of June 14, 2000.) The AAB held the scheduled hearing on June 15, 2000, and found that Williams "had conducted his appeals in a frivolous and vexatious manner and costs should be awarded to the Commissioner and the Law Society." (Ex. B, AAB proceedings of June 15, 2000.) The AAB acknowledged Williams' "letter faxed to the Board at the last minute. In this letter [Williams] tried to inhibit the Board from proceeding with the hearing of the costs applications. He cited various United States statutes seeking to warn the Board that participants in the appeal proceedings would be subject to criminal contempt proceedings. This again demonstrated that [Williams] had clearly no intention to pursue his appeals according to the law but had tried to threaten the Board." (Id.)

Williams, when he filed the instant adversary proceeding,[5] simultaneously dis-

---

5. The defendants include Kevin Bowers and Jonathan Harris, attorneys in the law firm Deacons, who represented the Law Society; the Law Society of Hong Kong, a corporation; Patrick Moss, general secretary of the Law Society; Herbert Hak–Kong Tsoi, president of the Law Society; the Privacy Commissioner for Personal Data, a corporation with certain duties and powers prescribed under Hong Kong ordinance; Stephen Lau Ka-men, the

missed his bankruptcy case without having filed the required schedules, statement of financial affairs, or a proposed Chapter 13 plan, and without having paid any portion of the filing fee for his petition.[6] When asked by the court at the motion hearing why he dismissed his Chapter 13 bankruptcy case, Williams replied, "I dismissed the Chapter 13, your Honor, because, in fact, it had not worked. They had proceeded with [the AAB proceedings], and the stay had been violated. What was the point of continuing . . . ." (Tr. at 10.)

## III.

### *DISCUSSION*

■■■ "On a Rule 12(b)(2)[7] motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that the court has jurisdiction over the defendant. Prior to discovery, a plaintiff may defeat a motion to dismiss based on legally sufficient allegations of jurisdiction." *Metropolitan Life Insurance Co. v. Robertson–Ceco Corp.*, 84 F.3d 560, 566 (2d Cir.1996). Fed.R.Bankr.P. 7004(f) provides:

> (f) *Personal Jurisdiction.* If the exercise of jurisdiction is consistent with the Constitution and laws of the United States, serving a summons or filing a

waiver of service in accordance with this rule or the subdivisions of Rule 4 F.R.Civ.P. made applicable by these rules is effective to establish personal jurisdiction over the person of any defendant with respect to a case under the Code, or arising in or related to a case under the Code.

■■■ "To exercise personal jurisdiction over a defendant in a federal question case, a plaintiff must demonstrate that (1) bringing the defendant into federal court accords with the Fifth Amendment due process principles, and (2) the defendant is amenable to process." *See* 4 Charles Alan Wright and Arthur R. Miller, *Federal Practice and Procedure: Civil 2d*, ¶ 1067.1 (2001 Supp.). The Hong Kong defendants do not dispute that service of the complaint upon them was in accordance with the procedures set forth in Fed.R.Bankr.P. 7004 and the applicable provisions of Fed. R.Civ.P. 4. Accordingly, the principal issue before the court, under the parties' stipulation, is whether the exercise by this court of personal jurisdiction over the Hong Kong defendants comports with the due process requirements of the Fifth Amendment.[8] *See Chew v. Dietrich*, 143 F.3d 24, 28 (2d Cir.1998) (Fifth Amendment due process clause applies in federal question case where defendant was served pursuant

---

appointed Commissioner at all times relevant to this proceeding; Eric Pun, an attorney employed by the Commissioner; Tony Lam, an employee of the Commissioner; Deacons, a Hong Kong law firm with offices in Asia and Australia; Graham & James, a United States law firm associated with Deacons prior to July 1, 2000; and Mimi Leung, an employee of the Hong Kong government who is Secretary to the AAB.

6. Williams had received permission to pay the filing fee of $185 in instalments with the first instalment due July 14, 2000. The full amount of the filing fee became due upon the dismissal of the bankruptcy case, and remains unpaid.

7. Fed.R.Civ.P. 12(b)(2) provides that a defense of "lack of jurisdiction over the person" may be made by motion.

8. Although the position was created and empowered by Hong Kong ordinance, the Commissioner does not have governmental immunity from the jurisdiction of the court: *See* Ord. CAP. 486 (Def.Ex.A) (Commissioner is a corporation "capable of suing and being sued," § 5(2)(b), and the Commissioner "shall not be regarded as a servant or agent of the Government or as enjoying any status, immunity or privilege of the Government," § 5(8)).

to Fed.R.Civ.P. 4). Although much of the decisional law concerning personal jurisdiction concerns questions of state law and the due process requirements of the Fourteenth Amendment, rather than those of the Fifth Amendment, the Second Circuit has stated that "the due process analysis is basically the same under both the Fifth and the Fourteenth Amendments. The principal difference is that under the Fifth Amendment the court can consider the defendant's contacts throughout the United States, while under the Fourteenth Amendment only the contacts with the forum state may be considered." *Id.*

■ The Supreme Court, in *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), held that due process requires (1) that a defendant have "sufficient contacts" with the forum to make it (2) "reasonable and just according to our traditional conception of fair play and substantial justice" for its courts to exercise personal jurisdiction over a defendant not physically present in the forum. *Id.* at 320, 66 S.Ct. 154. In determining whether minimum contacts exist, the court considers the relationship among the defendant, the forum, and the litigation. *Chew*, 143 F.3d at 28 (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984)).

The due process test for personal jurisdiction has two related components: the "minimum contacts" inquiry and the "reasonableness" inquiry. The court must first determine whether the defendant has sufficient contacts with the [United States] to justify the court's exercise of personal jurisdiction. For purposes of this initial inquiry, a distinction is made between "specific" jurisdiction and "general" jurisdiction. Specific jurisdiction exists when [the United States] exercises personal jurisdiction over a de-

fendant in a suit arising out of or related to the defendant's contacts with the [United States]; a court's general jurisdiction, on the other hand, is based on the defendant's general business contacts with the [United States] and permits a court to exercise its power in a case where the subject matter of the suit is unrelated to those contacts. Because general jurisdiction is not related to the events giving rise to the suit, courts impose a more stringent minimum contacts test, requiring the plaintiff to demonstrate the defendant's continuous and systematic general business contacts. The second stage of the due process inquiry asks whether the assertion of general jurisdiction comports with traditional notions of fair play and substantial justice—that is, whether it is reasonable under the circumstances of the particular case.

*Metropolitan Life*, 84 F.3d at 567–68.

To establish the minimum contacts necessary to justify "specific" jurisdiction, the plaintiff first must show that his claim arises out of or relates to defendant's contacts with the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984). The plaintiff must also show that the defendant "purposefully availed" himself of the privilege of doing business in the forum state and that the defendant could foresee being "haled into court" there. *See World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985).

*Chew*, 143 F.3d at 28.

■ Williams' complaint alleges two actions during the pendency of Williams' bankruptcy case that he contends violated

the automatic stay. The first was the continuation, on June 15, 2000, of the AAB proceedings in Hong Kong. The AAB proceedings concerned only matters of Hong Kong law, arose from complaints and appeals Williams filed in Hong Kong while he was in Hong Kong, and concerned conduct of the Hong Kong defendants and Williams in Hong Kong. These actions do not relate to contacts of any of the Hong Kong defendants with the United States. Accordingly, they do not give rise to specific jurisdiction and Williams therefore must show that the Hong Kong defendants' contacts with the United States "constitute the kind of continuous and systematic general business contacts" necessary for the court to exercise general jurisdiction over their persons. *Helicopteros*, 466 U.S. at 416, 104 S.Ct. 1868.

■ The second alleged violation of the stay was Bowers' June 19, 2000 letter, as counsel to the Law Society, informing Williams of the AAB's decision and demanding payment. Williams alleges no contact with the United States other than mailing the letter to Williams at his Connecticut address as giving rise to the alleged violation of stay. The mailing of the letter is not sufficient to satisfy the minimum contact requirement for specific jurisdiction, since the contact with the United States arose solely from Williams' unilateral decision to return there. *See Burger King Corp. v. Rudzewicz*, 471 U.S. at 474–76, 105 S.Ct. 2174 ("[A] defendant will not be haled into a jurisdiction solely as a result of ... the unilateral activity of another party or a third person.") (citations omitted).

· ■ The exercise of the court's general jurisdiction, where the injury complained of did not arise from and is not related to a defendant's contacts with the United States, requires a stronger nexus between the defendant and the United

States; the defendant must have "continuous and systematic general business contacts with the United States." *Helicopteros*, 466 U.S. at 416, 104 S.Ct. 1868. None of the Hong Kong defendants conducts business in or solicits business from the United States. Williams states that several partners of Deacons were educated in the United States, were admitted to practice in New York or California or previously practiced in the United States. However, in his affidavit, Bowers avers that each of the attorneys Williams refers to resides outside the United States and none has had any business contact with the United States for several years. Williams argues that the correspondence sent him via post and fax are sufficient to constitute the continuous and systematic contacts between the Hong Kong defendants and the United States. Williams has submitted and the court has reviewed such correspondence, all of which is either (1) the decision of the AAB and the notices, and copies of filings related to the AAB proceedings or (2) replies to letters Williams sent to the Hong Kong defendants. The only connection between the cited correspondence and the United States arises not from any Hong Kong defendant's decision to "purposefully avail[ ] itself of the privilege of conducting activities in the [United States]," but from Williams' unilateral activity in removing to the United States and, in certain instances, his requests for information from certain of the Hong Kong defendants. *Burger King*, 471 U.S. at 475, 105 S.Ct. 2174 (citing, *inter alia*, *Kulko v. California Superior Court*, 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978) which held that a state court could not exercise personal jurisdiction over "a divorced husband ... whose only affiliation with the forum was created by his former spouse's decision to settle there.").

■ Williams also argues that Deacons, through its affiliation with the United States law firm, Graham & James, should be considered as conducting business in the United States. In his affidavit, Bowers avers that Deacons never conducted any business in the United States, either during its affiliation with Graham & James or since; that none of the partners of Graham & James were partners of Deacons and vice-versa; that Deacons never maintained any office in the United States; and that, although Deacons used the name Deacons, Graham & James prior to July 1, 2000, only Graham & James, which did not modify its name to include reference to Deacons, maintained any offices in the United States or conducted any business in the United States. The court finds that Deacons, through its former affiliation with Graham & James, did not establish the contacts with the United States necessary to confer personal jurisdiction.

■ Williams makes an additional argument that service in New York on a partner of Graham & James was sufficient to confer personal jurisdiction on Deacons and Bowers, and cites *First American Corp. v. Price Waterhouse LLP*, 154 F.3d 16 (2d Cir.1998). The court finds this authority inapposite to the present proceeding. In *Price Waterhouse*, a plaintiff personally served a subpoena on a partner of PW–UK (a British partnership) while he was physically present in New York. The court in *Price Waterhouse* stated:

"There is no dispute that Mr. Newton was a partner in PW–UK in August 1997. And … Mr. Newton was served by hand in New York at that time." *Id.* at 19.

Williams urges the court to analogize his service in New York upon Lawrence Blume, a partner of Graham & James, and find it sufficient to confer personal jurisdiction on Deacons and all of its partners. This argument lacks merit. In the present matter, Williams does not allege that any partner of Deacons was served while physically present anywhere in the United States. Furthermore, service was made after July 1, 2000, the date on which Deacons and Graham & James terminated their affiliation.

■ The court concludes that the contacts alleged by Williams between the Hong Kong defendants and the United States are insufficient to satisfy the "minimum contacts" prong of the due process inquiry. Although not required to do so in light of this determination, the court further concludes that Williams has also not satisfied the reasonableness inquiry required under the due process analysis. *See Metropolitan Life*, 84 F.3d at 568. The circumstances recited in this opinion, including the purpose of the automatic stay,[9] Williams' response to the court at the motion hearing that he filed his bankruptcy petition solely to invoke the stay for the Hong Kong proceeding (and not, therefore, to seek debtor relief and a discharge from debt), and his dismissal of his bankruptcy case underscore the court's conclusion that it lacks any strong interest in adjudicating this matter.[10]

9. The automatic stay is intended to provide a breathing spell to debtors and to prevent dissipation of estate assets. *See* H.R. No. 95–595, 95th Cong., 1st Sess. 340–42 (1977); S.R. No. 95–989, 95th Cong., 2d Sess. 49–51 (1978), U.S.Code & Admin.News 1978, pp. 5963, 5787.

10. The interest of the forum in adjudicating the matter at issue is one of the five factors enumerated in *Metropolitan Life*, 84 F.3d at 568, in addition to (1) the burden on the defendant, (2) convenient, effective relief for the debtor; (3) interest of the judicial system; and (4) substantive social policies. The court has considered each of these factors and finds

## IV.

### *CONCLUSION*

In accordance with the foregoing discussion, the court concludes that it lacks personal jurisdiction over the Hong Kong defendants. The motion of the Hong Kong defendants to dismiss the adversary proceeding as to them in accordance with Fed.R.Civ.P. 12(b)(2) is granted and a judgment will so enter. It is

**SO ORDERED.**

the scales tipped considerably in favor of the Hong Kong defendants.