

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-20-2004

# Miller Yacht Sales v. Smith

Precedential or Non-Precedential: Precedential

Docket No. 02-3304

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Miller Yacht Sales v. Smith" (2004). *2004 Decisions.* Paper 277.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/277

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

THE UNITED STATES COURT OF
APPEALS FOR THE THIRD CIRCUIT
_____

No. 02-3304
_____

MILLER YACHT SALES, INC.,

Appellant

v.

STEVEN SMITH, individually;
MARINER YACHT SALES, INC.;
IVAN BOGACHOFF, individually;
ISLAND YACHT BROKERS;
ABC CORPORATIONS 1-10,
names being fictitious;
JOHN DOES, (1-10),
names being fictitious

_____

APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
DISTRICT OF NEW JERSEY

(D.C. No. 02-cv-00402)
District Judge: The Honorable Anne E.
Thompson
_____

ARGUED OCTOBER 28, 2003

BEFORE: SCIRICA, Chief Judge,
NYGAARD, and AMBRO,
Circuit Judges.

(Filed September 20, 2004)

Chryssa Yaccarino, Esq. (Argued)
Villani & DeLuca
703 Richmond Avenue
Point Pleasant Beach, NJ 08742
Counsel for Appellant

Ivan Bogachoff, Esq. (Argued)
Bogachoff & Associates
4500 New Hampshire Avenue, NW
Suite B
Washington, DC 20011
Counsel for Appellees

_____

OPINION OF THE COURT
_____

NYGAARD, Circuit Judge.

The District Court dismissed Miller Yacht Sales' suit for trade-dress infringement, statutory and common law unfair competition, and tortious interference with prospective economic advantage, because it concluded that it lacked personal jurisdiction over Appellees. Because we conclude that Appellees have sufficient contacts with New Jersey, we will reverse.

I.

To defeat Appellee's motion to dismiss for lack of personal jurisdiction, Miller Yacht was required to present a *prima facie* case that jurisdiction existed. *Mellon Bank (East) PSFS Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992). Miller Yacht is a New Jersey corporation with its principal offices in South Toms River, New Jersey. Miller Yacht designs,

manufactures, markets and sells boats. Specific to this action, Miller Yacht has designed, manufactured, marketed and sold 34' and 38' Marine Trader Double Cabin and Sedan Yachts.

Appellees also sell and market boats, but are not New Jersey residents or corporations. Beginning in 1998, Miller Yacht and Appellees began negotiating a deal that was intended to allow the Appellees to become exclusive marketing representatives and dealers for some of Miller Yacht's boats, including the Marine Trader Yachts.[1] During these

---

[1] Appellees stress their argument that they were each acting in their individual corporate or personal capacities and that their contacts with New Jersey should be analyzed separately. While they are correct that, in general, a court must analyze questions of personal jurisdiction on a defendant-specific and claim-specific basis, *Calder v. Jones*, Appellees' reliance on this general rule ignores substantial portions of Miller Yacht's allegations and the evidence submitted to support those allegations. 465 U.S. 783, 790 (1984). Miller Yacht alleges that Steven Smith and Ivan Bogachoff were acting as partners while they negotiated with Miller Yacht. In its complaint, Miller Yacht alleges, "Defendant Ivan Bogachoff . . . *was a partner* with Steven Smith and at all relevant times hereto and, upon information and belief, *had express, implied, and/or apparent authority to*

(continued...)

[1] (...continued)
*engage in transactions on behalf of Steven Smith* and himself, individually, for the purpose of entering into a business agreement wherein Bogachoff would become a broker dealer, along with *his partner*, of Marine Trader yachts." Appellant's App. at 13 (emphasis added). This allegation is supported by Donald Miller's affidavit in which he states that Smith and Bogachoff acted together during relevant negotiations and that on a particular occasion in February, 2000 "[Miller] personally saw Defendants Smith and Bogachoff working in a [boat show] booth soliciting New Jersey Customers. There, [Miller] was introduced to Defendant Bogachoff as the partner of Defendant Smith." Appellant's App. at 48.

Miller Yacht has alleged that Bogachoff and Smith were partners and that they were each also representing one of the appellee companies and has supported these allegations with a sworn affidavit. We view these allegations and their supporting evidence in a light most favorable to Miller Yacht and, therefore, infer a partnership between Bogachoff and Smith. *See Pinker v. Roche Holdings LTD*, 292 F.3d 361, 368 (3d Cir. 2002) (holding that in ruling on a Rule 12(b)(2) motion we must accept all of the plaintiff's allegations as true and construct disputed facts in favor of the plaintiff.) We disagree with Appellees

(continued...)

2

negotiations, Appellees made phone calls from their offices outside New Jersey to Miller Yacht's offices in New Jersey. Additionally, Appellees transmitted facsimiles into New Jersey, including proposed licensing agreements for the trade names relevant to the negotiations. Appellees also traveled to Miller Yacht's offices in New Jersey. During one of these trips, Donald Miller, the president of Miller Yacht, provided Steven Smith with a copy of Miller Yacht's sales brochure. That brochure included photographs and floor plans of the Marine Trader Yachts. Miller Yacht also alleges that it arranged and paid for Smith to travel to China to observe the manufacturing process for the Marine Trader Yachts and meet Miller Yacht's business contacts relevant to those yachts. Miller Yacht claims that Appellees sent facsimile transmissions to Donald Miller as part of the planning activities for Smith's trip to China.

Eventually, the negotiations between the parties reached a standstill and they failed to reach an agreement. Miller Yacht alleges that Appellees misappropriated the photographs and floor plans contained in Miller Yacht's sales brochure, as well as other intellectual property owned by Miller Yacht, and used it to produce and market boats that are identical to the Marine Trader Yachts. It further alleges that Appellees engaged Miller Yacht's business contacts in China to manufacture the boats, and thereby interfered with Miller Yacht's business relationship with those contacts.

Based on these allegations, Miller Yacht sued Appellees for trade-dress infringement, statutory and common law unfair competition, and tortious interference with prospective economic advantage. Appellees moved to dismiss Miller Yacht's complaint based on lack of personal jurisdiction and improper venue. The District Court, without holding an evidentiary hearing, granted Appellees' motions to dismiss for lack of personal jurisdiction. This appeal followed.

II.

The District Court had subject matter jurisdiction over this action under 28 U.S.C. §§ 1331, 1332 and 1367. We have appellate jurisdiction over the District Court's final order under 28 U.S.C. § 1291 and review the District Court's decision *de novo*. *Pinker*, 292 F.3d at 368.

A federal court sitting in New Jersey has jurisdiction over parties to the extent provided under New Jersey state law. *See* Fed. R. Civ. P. 4(e); *see also Carteret*, 954 F.2d at 144. New Jersey's long-arm

---

1.(...continued) that these allegations and affidavits fall short of alleging a relationship between the parties from which we must attribute the contact of any one individual Appellee to all of the Appellees. *Carteret Sav. Bank, F.A. v. Shushan*, 954 F.2d 141, 145 n.6 (3d Cir. 1992) (observing that "[a] partnership and each partner is held liable for the act of every other partner, executed in the usual way of carrying on the business of the partnership").

3

statute provides for jurisdiction co-extensive with the due process requirements of the United States Constitution. N.J. Court Rule 4:4-4(c); *see Charles Gendler & Co. v. Telecom Equip. Corp.*, 508 A.2d 1127, 1131 (N.J. 1986). Thus, parties who have constitutionally sufficient "minimum contacts" with New Jersey are subject to suit there. *See Carteret*, 954 F.2d at 149.

Miller Yacht claims that the District Court had specific jurisdiction over Appellees based on their contacts with New Jersey.[2] Miller Yacht concedes that Appellees do not have the "consistent and systematic" contacts with New Jersey that would subject them to general jurisdiction in that forum. *See Pinker*, 292 F.3d at 368 n.1.

In analyzing Miller Yacht's specific jurisdiction argument, we must "examine the relationship among the [Appellees], the

forum, and the litigation." *Id.* at 368. Specific jurisdiction over a defendant exists when that defendant has "purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (internal quotations and citation omitted). A single contact that creates a substantial connection with the forum can be sufficient to support the exercise of personal jurisdiction over a defendant. *Id.* at 475 n.18.

If these "purposeful availment" and "relationship" requirements are met, a court may exercise personal jurisdiction over a defendant so long as the exercise of that jurisdiction "comport[s] with fair play and substantial justice." *Id.* at 476 (internal quotations and citations omitted). To defeat jurisdiction based on this fairness inquiry, a defendant must "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.* at 477. The Supreme Court has indicated that lower courts addressing the fairness question may consider "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Id.* (internal quotations omitted).

To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff bears the burden of establishing the court's

---

[2.] Miller Yacht also alleges Appellees were subject to personal jurisdiction under the "effects test." *See Calder*, 465 U.S. at 789. Under that test, a party is subject to personal jurisdiction in a state when his or her tortious actions were intentionally directed at that state and those actions caused harm in that state. Because we find that Appellees have sufficient contacts with New Jersey under the more traditional personal jurisdiction analysis, we need not reach the question of whether the appellees would also be subject to jurisdiction under the effects test.

4

jurisdiction over the moving defendants. *Pinker*, 292 F.3d at 368. However, when the court does not hold an evidentiary hearing on the motion to dismiss, the plaintiff need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor. *Id.; see also Carteret,* 954 F.2d at 142 n.1.

The District Court did not hold an evidentiary hearing but did determine, based on the parties' submissions and arguments, that Miller Yacht failed to satisfy its burden because the contacts it presented did not show that Appellees purposefully availed themselves of New Jersey's laws. We disagree based on three important contacts and the context of those contacts.

## III.

## A.

## Trade-dress Infringement and Unfair Competition Claims

First, Miller Yacht alleges that Appellees made trips to New Jersey as part of their negotiations. Miller Yacht claims that during one of these trips Smith came to New Jersey and received Miller Yacht's sales brochure. The receipt of this sales brochure was Appellees' first step toward the misappropriation of Miller Yacht's trade-dress, photos and floor plans. This misappropriation is not only related, but is essential, to Miller Yacht's unfair competition and trade-dress infringement claims. Thus, Appellees came to New Jersey allegedly to receive the property

that they eventually misappropriated and used to injure Miller Yacht.

Second, Miller Yacht alleges Appellees placed the misappropriated photos and floor plans in advertisements in boating magazines circulated in New Jersey and in at least one brochure that was sent directly to a potential customer in New Jersey. Intentionally and directly transmitting the misappropriated property that Appellees initially obtained in New Jersey back into New Jersey is a very strong contact between them and the State. It is also a second essential element of Miller Yacht's infringement and unfair competition claims.[3]

Miller Yacht also alleges that, at least before Appellees misappropriated its intellectual property, Appellees were

[3] There is no question that this contact is sufficient to subject Island Yacht Brokers and Mariner Yacht Sales to jurisdiction in New Jersey. We attribute this contact to Appellees because Miller Yacht specifically alleged that Steven Smith was the individual responsible for Island Yacht Brokers' "'[advertising and brochure producing] efforts and activities'" Appellants' App. at 41 (quoting affidavit of Steven Smith) (brackets in original). As described in footnote 1, Miller Yacht has also alleged that Smith and Bogachoff were acting as partners during all relevant periods. We accept these allegations as true and, therefore, attribute this contact to all Appellees.

directly engaged in the marketing of boats in New Jersey. They attended trade shows in New Jersey and adjoining states and advertised in regional boating magazines that were distributed in New Jersey. These pre-misappropriation contacts and the continued advertisements in New Jersey provide a nexus between Appellees and New Jersey, and logically explain why at least one New Jersey resident would request Appellees' sales brochure. While we do not base our holding on these pre-misappropriation contacts (they are not among the three contacts on which we rely), they are relevant to show that the request for sales material that Appellees received from a New Jersey resident was not a random or fortuitous occurrence upon which jurisdiction may not properly lie. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295-99 (1980) (holding that one fortuitous act connecting a defendant with a state with which it has no other ties is not sufficient to support the exercise of personal jurisdiction over that defendant in that state).

The contacts alleged by Miller Yacht are sufficient to satisfy the "purposeful availment" and "relatedness" requirements of due process with respect to Miller Yacht's trade-dress infringement and unfair competition claims.

### B.

### Tortious Interference Claim

Miller Yacht also alleges that Appellees had substantial and repeated contact with New Jersey during the negotiations between the parties.

Although these negotiations are only indirectly related to Miller Yacht's trade-dress infringement and unfair competition claims, they are directly related to its tortious interference claim and are the third contact upon which we rely. Miller Yacht specifically alleges that Appellees sent facsimile transmissions into New Jersey in order to arrange for Smith to travel to China to visit the Chinese companies that manufactured the Marine Trader Yachts for Miller Yacht. Miller Yacht further alleges that, subsequent to this trip, Appellees unlawfully engaged these Chinese companies to produce "strikingly similar yachts . . . according to the interior and exterior plans and specifications owned by [Miller Yacht], using the molds used to construct said yachts." Appellant's App. at 28. Miller Yacht alleges that Appellees' engagement of these companies to produce the "strikingly similar" yachts interfered with Miller Yacht's prospective economic advantage flowing from its own relationship with these companies.

We conclude that Appellees' contacts with New Jersey in setting up their trip to China, coupled with the contacts we found sufficient to support the exercise of personal jurisdiction over Appellees on Miller Yacht's other claims, are sufficient to support the exercise of jurisdiction on the tortious interference with prospective economic advantage claim as well.

We disagree with the argument that these contacts do not support jurisdiction over this claim. First, we do not agree that we must apply an immediate or proximate

6

cause standard to determine whether a claim arises out of a defendant's contacts with a forum state and we do not read *Pinker*, *Vetrotex Certainteed Corp. v. Consolidated Fiber Glass Products Co.*, 75 F.3d 147 (3d Cir. 1996), or *Remick v. Manfredy*, 238 F.3d 248, 255-56 (3d Cir. 2001), as standing for such a proposition. In *Pinker*, we had to determine whether a foreign issuer and sponsor of American Depositary Receipts ("ADRs") was subject to personal jurisdiction in this country on claims that it misrepresented material facts relevant to those ADRs.[4] We concluded that because the foreign issuer "sponsor[ed] an ADR facility [in America, it] purposely availed itself of the privilege of conducting activities in the American securities market, and thereby established the requisite minimum contacts with the United States." *Pinker*, 292 F.3d at 371 (internal quotation omitted). Importantly, we did not apply a proximate cause test to determine personal jurisdiction. Instead, based solely on the defendant's sponsorship of the ADR facility at issue, an action that was certainly not the proximate cause of the fraudulent misrepresentation, we found that the defendant had the requisite minimum

contacts to establish jurisdiction with regard to the plaintiff's claims. *Id.*

*Vetrotex* involved contract claims and "there are different considerations in analyzing jurisdiction over contract claims and over certain tort claims." *Remick*, 238 F.3d at 255-56. Further, in contract claims we analyze the totality of the circumstances surrounding a contract to determine whether the exercise of jurisdiction over the defendant is proper. *Id.* at 256. We do not consider this totality of the circumstances test to be the equivalent of a requirement that the defendants' contacts with the forum be the proximate cause of the plaintiff's claims.

*Remick* also does not support a proximate cause standard. *Remick* was a breach of contract case, but involved various tort claims as well. *Id.* at 256. With respect to those tort claims, we applied the effects test to determine if the defendant was subject to jurisdiction in Pennsylvania. *Id.* at 258. Similarly, in *IMO Industries, Inc. v. Kiekert AG*, we applied the effects test to analyze whether the defendant was subject to jurisdiction in New Jersey on the plaintiff's intentional tort claims. 155 F.3d 254, 265-66 (3d Cir. 1998). The focus on the effects test in both these cases convinces us that their requirement that the tortious actions of the defendant have a forum-directed purpose is not applicable in the more traditional specific jurisdiction analysis. As pointed out in Note 2 *supra*, the effects test expressly requires that "the defendant expressly aimed its tortious conduct at the forum, and thereby made the forum the

---

[4]In *Pinker*, the Court was confronted with a statute that authorized nationwide service of process and, therefore, needed to determine if the defendant had sufficient contacts with the United States to support jurisdiction. *Pinker*, 292 F.2d at 369.

focal point of the tortious activity." *Id.* at 265. This requirement is reasonable within the effects test because it insures that the defendant, who may not have any actual contact with the forum state, have sufficiently directed his tortious conduct at the state to render him subject to personal jurisdiction there. *See id.* at 265. Unlike this express requirement in the effects test, the traditional specific jurisdiction analysis simply requires that the plaintiff's claims "arise out of or relate to" the defendant's forum contacts. *Burger King*, 471 U.S. at 472 (internal quotations omitted). We do not agree with the argument that this traditional requirement is the equivalent of the more demanding relatedness requirement of the effects test.

We recognize that our conclusion that a defendant's contacts with a forum need not have been the proximate cause of the plaintiff's injuries in a tort case begs the question of what level of relationship is necessary under the "arise out of or relate to" requirement. We need not address this question that has plagued federal Courts of Appeals and has resulted in divergent rules. We have not laid down a specific rule because we have approached each case individually and taken a "realistic approach" to analyzing a defendant's contacts with a forum. *Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992)(internal quotation omitted); *see also Pennzoil Prods. Co. v. Colelli & Assocs. Inc.*, 149 F.3d 197, 203 (3d Cir. 1998) (acknowledging the difficulty of formulating bright-line rules in the personal jurisdiction analysis and indicating the fact-sensitive nature of that analysis).

This is the approach we take here, and conclude that Appellees' contacts with New Jersey are sufficient to subject them to jurisdiction on Miller Yacht's tortious interference claim. First, Miller Yacht alleges that Appellees sent communications into New Jersey in order to set up their trip to China. We have been clear that such communications may be factored into the minimum contacts analysis. *Grand Entm't Group, Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 482-83 (3d Cir. 1993). Second, we cannot ignore the fact that Miller Yacht alleges Appellees' tortious interference resulted from their engaging the Chinese companies to build the very boats that Miller Yacht alleges Appellees are using misappropriated photos and floor plans to advertise. As described above, those photos and floor plans were obtained in New Jersey and were sent back into New Jersey, after having been misappropriated, as part of Appellees' sales efforts. It is only in selling the boats that Miller Yacht or Appellees could expect to get any kind of economic advantage from the building agreement with the Chinese companies. Thus, these sales efforts, and their New Jersey-related activities, are vital parts of Miller Yacht's tortious interference claims. The sum of these contacts is sufficient to subject Appellees to personal jurisdiction in New Jersey on Miller Yacht's tortious interference claim.

### III.

We easily conclude that jurisdiction over Appellees is consistent with traditional notions of fair play and substantial justice. There is no compelling evidence of record why it would be unfair or unjust for Appellees to litigate this dispute in New Jersey. Without such compelling evidence, they cannot avoid the District Court's appropriate jurisdiction.

For these reasons, we will reverse the District Court's order dismissing Miller Yacht's complaint and remand the case to the District Court.

SCIRICA, *Chief Judge*, concurring in part, dissenting in part.

I write separately because I would find specific jurisdiction only as to Miller Yacht's unfair competition and trade dress infringement claims against appellees Island Yacht and Mariner Yacht. Nevertheless, because appellant's claims sound in tort, I would remand for the District Court to consider appellees' forum contacts under the "effects test." *See IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 265-66 (3d Cir. 1998).

### I.

Personal jurisdiction over a non-resident defendant may be asserted under general or specific theories of jurisdiction. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 & n.9

(1984). Because there are no allegations that appellees' contacts with the forum are so "continuous and systematic" as to give rise to general jurisdiction, our inquiry is limited to specific jurisdiction. Specific jurisdiction permits the exercise of personal jurisdiction over non-resident defendant only if the plaintiff's claims "arise out of or relate to" the defendant's forum contacts. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). Consequently, the specific jurisdiction determination is both claim-specific, *see Remick v. Manfredy*, 238 F.3d 248, 255-56 (3d Cir. 2001) (analyzing specific jurisdiction over tort and contract claims separately); *Gehling v. St. George's Sch. of Med., Ltd.*, 773 F.2d 539, 543-44 (3d Cir. 1985) (finding personal jurisdiction over fraudulent misrepresentation and emotional distress claims, but not negligence and breach of contract claims), and defendant-specific, *see Rusk v. Savchuk*, 444 U.S. 320, 332 (1980) ("The requirements of *International Shoe* . . . must be met as to each defendant.").[5]

---

[5.]Due process requires that non-resident defendants have "minimum contacts" with the forum such that the exercise of personal jurisdiction does not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citing *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). The defendant's contacts with the forum state must have a basis in some act by which the defendant

(continued...)

## II.

While acknowledging the claim- and defendant-specific nature of the specific jurisdiction inquiry, the majority concludes the allegations in the complaint require us to attribute the forum contacts of "any one individual Appellee to all of the Appellees." The majority reaches this conclusion by inferring the existence of a "partnership" based upon Miller Yacht's allegations that Smith and Bogachoff "act[ed] as partners" in their negotiations with Miller Yacht, in which they represented Island Yacht and Mariner Yacht, respectively. Although we accept all allegations in the complaint as true and construe all disputed facts in favor of the plaintiff on a motion to dismiss under Fed. R. Civ. Pro. 12(b)(2), I do not believe it is reasonable to infer the appellees engaged in a "partnership."[6]

There is no averment in the complaint or in the supporting affidavits that appellees—two non-resident persons and two out-of-state corporations—are collectively organized as a partnership. As I read the complaint, the allegation that Smith and Bogachoff "act[ed] as partners"

---

[5.](...continued)
"purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hansen v. Denckla*, 357 U.S. 235, 253 (1958). The "minimum contacts" analysis assesses the "relationship among the defendant, the forum, and the litigation." *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977).

[6.]In acknowledging the procedural distinctions between a Rule 12(b)(6) motion and a Rule 12(b)(2) motion, we have explained:

(continued...)

---

[6.](...continued)

> A Rule 12(b)(2) motion . . . is inherently a matter which requires resolution of factual issues outside the pleadings, i.e. whether in personam jurisdiction actually lies. Once the defense has been raised, then the plaintiff must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence. . . . [A]t no point may a plaintiff rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of in personam jurisdiction. Once the motion is made, plaintiff must respond with actual proofs, not mere allegations.

*Patterson v. FBI*, 893 F.2d 595, 603-604 (3d Cir. 1990) (citing *Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 67 n.9 (3d Cir. 1984)) (internal citations omitted).

merely suggests some level of coordinated conduct.[7]   Of course, this relationship ultimately may prove relevant to the jurisdictional analysis. *See Rusk*, 444 U.S. at 332 ("[T]he parties' relationships with each other may be significant in evaluating their ties to the forum.").   But on the allegations and affidavits presented, I cannot infer the existence of a partnership that would provide the basis for attributing the jurisdictional contacts of one appellee to them all.[8]

Aggregating appellees' contacts obscures important differences in their individual forum activities and the alleged conduct giving rise to the claims asserted. For example, Smith's contacts with New Jersey in arranging his trip to China did not involve Bogachoff or Mariner Yacht. Moreover, as Miller Yacht's affidavit states, the China trip itself "was in furtherance of negotiations that took place between . . . Smith, Island Yacht Brokers and Miller Yacht" relating to Island Yacht becoming an exclusive dealer of "Marine Trader" and "Trade Wind" yachts in Maryland. Appellant App. 41. These negotiations did not involve Bogachoff or Mariner Yacht.   Similarly, the primary forum contact relied upon by the majority—receipt of the Miller Yacht sales brochure in New Jersey—is apparently attributable only to Smith in his capacity as agent for Island Yacht. Even assuming Bogachoff had implied authority to act as Smith's agent during the broker-dealer

---

[7.]The allegations do support an inference that Smith and Bogachoff acted as agents for Island Yacht Brokers and Mariner Trader respectively, and their forum contacts as agents may be attributed to the appellee corporations accordingly. *Grand Entm't Group v. Star Media Sales, Inc.,* 988 F.2d 476, 483 (3d Cir. 1993) ("[A]ctivities of a party's agent may count toward the minimum contacts necessary to support jurisdiction.").

[8.]Some courts have imputed jurisdictional contacts to foreign defendants in the absence of a partnership or other legal entity based upon the conspiracy theory of jurisdiction. *See, e.g., Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan*, 115 F.3d 1020, 1031 (D.C. Cir. 1997) (recognizing that the conspiracy theory of personal jurisdiction requires plaintiff to plead with particularity "the conspiracy as well as the overt acts within the forum taken in furtherance of the conspiracy") (citation omitted); *Textor v. Bd. of Regents*, 711 F.2d 1387,

(continued...)

---

[8.](...continued)
1392-93 (7th Cir. 1983) (applying conspiracy theory of jurisdiction to Illinois long-arm statute).   That said, "[w]hether personal jurisdiction can be obtained under a state long-arm statute on a conspiracy rationale at all is a question of state law." *Stauffacher v. Bennett*, 969 F.2d 455, 460 (7th Cir. 1992).   While it is unclear whether New Jersey even recognizes the conspiracy theory of jurisdiction, we need not address this issue because Miller Yacht has not alleged an actionable conspiracy.

negotiations with Miller Yacht, this agency relationship should not provide a basis for imputing forum contacts by Smith to Bogachoff or Mariner Yacht.

I recognize the Supreme Court has rejected overly "mechanical or quantitative" tests of jurisdiction. *Int'l Shoe*, 326 U.S. at 319. But even a realistic approach to specific jurisdiction must comport with due process, and due process requires that we consider the forum contacts of each defendant independently according to the specific claims asserted.

### III.

Even if the alleged forum-related contacts could be attributed to all appellees en masse, Miller Yacht's claims do not necessarily "arise out of or relate to" those contacts. *See Burger King*, 471 U.S. at 472. The courts of appeals have adopted divergent interpretations of "arise out of or relate to" as that phrase relates to the specific jurisdiction analysis. *See United Elec. Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1089 (1st Cir. 1992) (describing uncertainty among the circuits); *see generally* Mark M. Maloney, *Specific Personal Jurisdiction and the "Arise from or Relate to" Requirement...What Does It Mean?*, 50 Wash. & Lee L. Rev. 1265 (Summer 1993). The distinctions between these interpretations are not without constitutional significance, as the "arise out of or relate to" requirement establishes a due process limitation on the degree of permissible attenuation between "the

defendant, the forum, and the litigation." *Shaffer*, 433 U.S. at 204.

At one end of the spectrum, the Court of Appeals for the First Circuit has held that with respect to a tort claim, a non-resident defendant's forum contacts must provide the "cause in fact" and "legal cause" for the plaintiff's injury. *Mass. Sch. of Law, Inc. v. Am. Bar Assoc.,* 142 F.3d 26, 35 (1st Cir. 1998); *see also Marine v. Hyatt Corp.*, 793 F.2d 427, 430 (1st Cir. 1986) (holding that forum-related contacts must form a "material element of proof" in order for the cause of action to "arise from or relate to" the forum contacts). At the other end of the spectrum, the Courts of Appeals for the Fifth and Ninth Circuits formulate a more expansive interpretation of "arise out of or relate to," under which a non-resident defendant's forum contacts are sufficient if they provide a "but for" cause for plaintiff's injury. *See Prejean v. Sonatrach, Inc.*, 652 F.2d 1260, 1270 n.21 (5th Cir. 1981) (noting that "contractual contacts" may provide "but for" causation for a claim sounding in tort); *Doe v. Am. Nat'l Red Cross*, 112 F.3d 1048, 1051 n.7 (9th Cir. 1997) ("[T]he 'but for' test is still employed in determining whether a plaintiff's injuries arose out of a defendant's forum-related activities."). Under this standard, a plaintiff's claim "arises out of or relates to" a foreign defendant's contacts with the forum if the defendant's forum activities provide a link in the causal chain which ultimately leads to plaintiff's injury.

Still other courts have navigated a course between these positions. For example, in *Chew v. Dietrich*, 143 F.3d 24 (2d Cir. 1998), the Court of Appeals for Second Circuit has suggested a sliding scale approach to evaluating the "relatedness" of specific jurisdiction contacts, which more closely resembles the "but for" standard in its potentially expansive scope:

> [T]he relatedness test is but a part of a general inquiry which is designed to determine whether the exercise of personal jurisdiction in a particular case does or does not offend "traditional notions of fair play and substantial justice." . . . Where the defendant has had only limited contacts with the state it may be appropriate to say that he will be subject to suit in that state only if the plaintiff's injury was proximately caused by those contacts. Where the defendant's contacts with the jurisdiction that relate to the cause of action are more substantial, however, it is not unreasonable to say that the defendant is subject to personal jurisdiction even though the acts within the state are not the proximate cause of the plaintiff's injury.

143 F.3d at 29 (citations omitted).

By contrast, the Court of Appeals for the Seventh Circuit has rejected this sort of "hybrid" jurisdictional analysis which effectively blends the concepts of general and specific jurisdiction:

> We cannot simply aggregate all of a defendant's contacts with a state—no matter how dissimilar in terms of geography, time, or substance—as evidence of the constitutionally required minimum contacts . . . [W]hen conducting business with a forum in one context, potential defendants should not have to wonder whether some aggregation of other past and future forum contacts will render them liable to suit there. Unless their contacts are continuous and systematic enough to rise to the level of general jurisdiction, individuals and corporations must be able to conduct interstate business confident that transactions in one context will not come back to haunt them unexpectedly in another.

*RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1277 (7th Cir. 1997) (citations omitted). The Supreme Court has yet to definitively resolve the appropriate scope of the "arise out of or relate to" requirement. *See Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 589 (1991) (declining to reach the scope of the relatedness requirement despite having certified it for review).

Although we have not expressly articulated our view on the "arise out of or relate to" requirement, our cases implicitly apply an immediate or proximate cause

13

standard. In analyzing jurisdictional contacts on a claim-by-claim basis, we have been careful to note that forum contacts supporting a contract claim are not necessarily relevant to establishing jurisdiction over a tort claim. For example, in *Remick*, we noted "there are different considerations in analyzing jurisdiction over contract claims and over certain tort claims." 238 F.3d at 255-56. In that case, we separately analyzed the forum contacts supporting jurisdiction over plaintiff's breach of contract, tortious interference with contract, misappropriation of image, civil conspiracy and defamation claims. In finding specific jurisdiction over the breach of contract claim, we noted the contract had been solicited, negotiated, consummated and performed in the forum. At the same time however, we found insufficient contacts to support jurisdiction over plaintiff's defamation and misappropriation claims notwithstanding an express contractual relationship between plaintiff and defendant clearly situated in the forum. In finding specific jurisdiction over plaintiff's intentional interference with contract claim, we reasoned that although the claim sounded in tort, it was "necessarily related to the contract" that was the subject of the alleged tortious interference. *Id*. at 260.

Likewise, in *Vetrotex CertainTeed Corp. v. Consolidated Fiber Glass Prods. Co.*, 75 F.3d 147, 153 (3d Cir. 1995), we concluded that only "dealings between the parties in regard to the disputed contract, not dealings unrelated to the cause of action," are relevant to the minimum contacts analysis. *Vetrotex* involved a breach of contract dispute over payments due under a 1992 supply agreement between Vetrotex and Consolidated Fiber Glass. The district court dismissed the complaint for lack of specific jurisdiction. We affirmed noting various contracts between Vetrotex and Consolidated Fiber Glass over the previous ten years were not sufficiently related to the claims based upon the contested supply agreement to give rise to jurisdiction. The claim-by-claim partitioning of jurisdictional contacts evident in *Remick* and *Vetrotex* demonstrates that forum contacts which merely provide a general context for the parties' relationship are insufficiently related to a claim to support specific jurisdiction.

Moreover, our holding in *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361 (3d Cir. 2002), supports application of the proximate cause standard. In *Pinker*, investors filed a securities fraud class action alleging foreign defendant Roche made material misrepresentations and misleading statements in press releases and reports filed with the Securities and Exchange Commission which caused plaintiffs to pay artificially high prices for Roche ADRs. The district court dismissed the complaint for lack of personal jurisdiction and we affirmed. The majority holds we based our dismissal "solely on the defendant's sponsorship of the ADR facility at issue, an action that certainly was not the proximate cause of the fraudulent misrepresentation." But the

misrepresentation claim was not predicated on sponsorship of the ADRs per se, but rather on the allegedly fraudulent information Roche filed with securities regulators in connection with that sponsorship. In finding Roche established minimum contacts by purposefully directing its activities towards the forum, the court noted that "a foreign corporation that has created an American market for its securities can fairly expect that that market will rely on reports and media releases issued by the corporation." *Id*. at 372. The forum contact in *Pinker*—reporting incorrect or fraudulent information to federal regulators— was the proximate cause of plaintiffs' fraudulent misrepresentation claim.

## IV.

## A.

The majority finds specific jurisdiction over appellees based on "three important contacts, and the context of those contacts." The first contact concerns Miller Yacht's allegation that Smith and Island Yacht came to New Jersey to receive one of its sales brochures. Because receipt of the brochure represents the "first step" towards the misappropriation of Miller Yacht's photographs, floor plans and trade dress, the majority concludes this contact provides a sufficient jurisdictional basis for appellant's common law and statutory unfair competition and trade dress infringement claims. I have a different view.

Miller Yacht's unfair competition and trade dress infringement claims relate to misuse of its intellectual property, not to the mere acquisition or possession of that property.[9] For example, the Lanham Act, 15 U.S.C. § 1125(a), on which Miller Yacht's infringement of trade dress (Count I) and federal unfair competition claims (Count II) are based, prohibits the "*use*[] in commerce" of any false descriptions or designations of origin which are likely to cause confusion regarding the origin of goods or services of another. *Id*. (emphasis added). Likewise, the New Jersey Unfair Competition Act (Counts III and IV) prohibits a person from appropriating "for his or their own use a name, brand, trade-mark, reputation or goodwill of any maker in whose product such merchant, firm or corporation deals." N.J. Stat. § 56: 4-1. A claim for unfair competition under New Jersey common law (Count V) is substantially similar. *American Tel & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1433 (3d Cir. 1994).

Although receipt of the sales brochure by Smith and Island Yacht in New Jersey may have provided the "first step" for Miller Yacht's unfair competition and trade dress infringement claims, this contact at most might supply the "but for"

___

[9.]There are no allegations that Smith improperly acquired the brochure. It appears Miller Yacht voluntarily provided the brochure to Smith during negotiations over the trademark licensing and exclusive dealership agreements.

causation for these claims. The conduct which provides the immediate cause of injury relates to the subsequent improper use of the material contained in the brochure. Applying the proximate cause standard, Miller Yacht's unfair competition and trade dress infringement claims against Smith and Island Yacht do not "arise out of or relate to" receipt of the sales brochure.

**B.**

The majority observes that "plac[ing] the misappropriated photos and floor plans in boating magazines circulated in New Jersey and in at least one brochure that was sent directly to a potential customer in New Jersey" provides a "strong contact" in support of appellant's unfair competition and trade dress infringement claims. The record reveals that these allegedly improper transmissions into the forum actually involve: (1) the use of allegedly misappropriated photographs and floor plans in Island Yacht advertisements which appear in trade publications distributed in New Jersey; and (2) the use of allegedly misappropriated photographs by Mariner Yacht in a sales brochure distributed to a single New Jersey resident. *See* JA 44, 47-48. These contacts should be evaluated separately to determine whether they provide a sufficient basis for exercising specific jurisdiction.

Advertising in a trade publication that reaches the forum generally does not, without more, provide a sufficient basis for exercising specific jurisdiction over a foreign defendant. *See, e.g., Mesalic v.*

*Fiberfloat Corp.,* 897 F.2d 696, 700 n.10 (3d Cir. 1990) (noting that non-resident defendant's marketing strategy, including advertising in national publications distributed in the forum, provided only tangential support for specific personal jurisdiction); *Gehling*, 773 F.2d at 542 (holding that advertising in newspapers which reach the forum are insufficient to establish "minimum contacts"). Moreover, there is no evidence in the record regarding the frequency with which Island Yacht advertised in these publications, the number of New Jersey residents reached, or whether Island Yacht had any knowledge or control over the extent to which they targeted New Jersey consumers. Nevertheless, the extent or frequency of advertising in the forum may be less significant where, as here, the plaintiff's unfair competition and trade dress infringement claims arose directly out of the improper use of Miller Yacht's photographs, plans and trade dress in commerce. *Burger King*, 471 U.S. at 476 n.18 ("So long as it creates a 'substantial connection' with the forum, even a single act can support jurisdiction."). I agree with the majority that the allegations relating to Island Yacht's publication of certain advertisements in trade journals that reached New Jersey are sufficiently related to Miller Yacht's unfair competition and trade dress claims as to provide specific jurisdiction over Island Yacht with respect to those claims.

But there are no allegations or any evidence in the record that appellee Smith was involved in this advertising effort or

otherwise was engaged in conduct that would permit imputing Island Yacht's forum contacts to him. *Nicholas v. Saul Stone & Co. LLC*, 224 F.3d 179, 184 (3d Cir. 2000) ("[J]urisdiction over . . . [individual] defendants does not exist simply because they are agents or employees of organizations which presumably are amenable to jurisdiction."). Likewise, for reasons stated, I would not impute this contact to appellees Bogachoff or Mariner Yacht.

The second contact involves the mailing of a Mariner Yacht brochure allegedly containing Miller Yacht's photographs to a single New Jersey resident. This contact is in some ways more significant for jurisdictional purposes than advertising in a regional trade publication because it specifically targets a resident of the forum. And, here again, plaintiff's unfair competition and trade dress infringement claims arise directly out of the allegedly improper use of Miller Yacht's photographs, plans and trade dress in the sales brochure. As such, I agree with the majority that this contact gives rise to specific jurisdiction over Mariner Yacht on the unfair competition and trade dress infringement claims. However, because there is no allegation that Bogachoff or Smith were involved in sending the sales brochure into New Jersey, there is no basis for imputing this contact to them.

## C.

The majority observes that the pre-contractual negotiations in New Jersey provided appellees the opportunity to deal with two Chinese companies with which Miller Yacht apparently had preexisting business relationships to design and build 34' and 38' double cabin and sedan yachts. The majority concludes these negotiations provide a jurisdictional basis for Miller Yacht's tortious interference with prospective economic advantage claim.

To establish a claim for tortious interference with prospective economic advantage, a plaintiff must show (1) unlawful, intentional interference with the prospect of, or reasonable expectation of, economic advantage, and (2) a reasonable probability that the plaintiff would have received the anticipated economic benefits had there been no interference. *See Harper-Lawrence, Inc. v. United Merchants & Mfrs., Inc.*, 619 A.2d 623, 630 (N.J. Super. Ct. App. Div. 1993). While the pre-contractual negotiations may have provided appellees with names and contact information, there are no allegations that appellees solicited business from or negotiated a business relationship with the Chinese boat manufacturers while in New Jersey. If anything, it would appear that these activities took place in China or from appellees' principle places of business outside the forum. While the effect or injury resulting from appellees' interactions with these Chinese firms ultimately may have been felt by Miller Yacht in New Jersey, I find no forum contacts which provide a basis for specific jurisdiction on the tortious interference claim.

17

## D.

Finally, in addition to appellees' discrete forum contacts, the majority suggests that appellees' unrelated pre-misappropriation conduct in New Jersey provides a "nexus" between appellees and the forum. For example, the majority notes that appellees attended trade shows in New Jersey "and in adjoining states," and advertised in magazines distributed in New Jersey. But there are no allegations that this conduct relates to the claims asserted. While stating these contacts are not "essential to this litigation" and are only "indirectly related to Millar Yacht's trade dress and unfair competition claims," the majority concludes the "sum of these contacts shows that Appellees purposefully availed themselves of New Jersey."

A forum contact that might otherwise prove jurisdictionally insufficient under a specific jurisdiction analysis may appear more convincing when swaddled in the more extensive, yet unrelated, forum contacts of a foreign defendant. And the contacts upon which the majority relies—attendance at trade shows, negotiating in the forum—may well go toward establishing New Jersey's general jurisdiction over appellees. But the parties agree that appellees' forum contacts are not so "continuous and systematic" to give rise to general jurisdiction. As such, I would not consider appellees' pre-misappropriation and unrelated forum contact as part of the specific jurisdiction analysis. "We cannot simply aggregate all of a defendant's contacts with a state—no matter how dissimilar in terms of geography, time, or substance—as evidence of the constitutionally required minimum contacts." *RAR*, 107 F.3d at 1277. Rather, specific jurisdiction will lie over a foreign defendant when the claim asserted "arises out of or relates to" the foreign defendant's contacts with the forum. *Burger King*, 461 U.S. at 472. Emphasizing contacts unrelated to the asserted causes of action blurs the fundamental distinction between specific and general jurisdiction.

## V.

In sum, I would find that only Island Yacht and Mariner Yacht have constitutionally sufficient "minimum contacts" with New Jersey to support specific jurisdiction as to plaintiff's unfair competition and trade dress infringement claims. I would not find specific jurisdiction over any of the appellees with respect to the tortious interference with prospective economic advantage claim. I would not end the jurisdictional inquiry here, however.

Where a non-resident defendant's contacts with the forum alone are insufficient to establish specific personal jurisdiction, "we must consider whether the application of *Calder v. Jones*, can change the outcome." *IMO Indus.*, 155 F.3d at 259-60 (citation omitted). In *Calder v. Jones*, 465 U.S. 783 (1984), the Supreme Court set forth an "effects test" for determining personal jurisdiction over non-resident defendants who commit intentional torts with effects inside the forum. "[U]nder *Calder* an intentional tort

directed at the plaintiff and having sufficient impact upon it in the forum may suffice to enhance otherwise insufficient contacts with the forum such that the 'minimum contacts' prong of the Due Process test is satisfied." *IMO Indus.*, 155 F.3d at 260.[10] Because Miller Yacht's claims sound in tort,[11] I would remand for the District Court to consider whether the effects of appellees' non-forum conduct give rise to specific jurisdiction under the *Calder* framework.

[10] In *IMO Industries*, we held that to establish jurisdiction under the "effects test," plaintiff must show: (1) defendant committed an intentional tort; (2) plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort; and (3) defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity. *Id*. at 265-66. We recognized that this "conservative reading of *Calder* may significantly limit the types of business tort cases that will satisfy the requirements of personal jurisdiction," but added that *Calder* did not "carve out a special intentional torts exception to the traditional specific jurisdiction analysis, so that a plaintiff could always sue in his or her home state." *Id*.

[11] We have described "unfair competition," and causes of action under the Lanham Act as intentional business torts. *See Granite State Ins. Co. v. Aamco Transmissions, Inc.*, 57 F.3d 316, 321 (3d Cir. 1995) ("[T]he Lanham Act is derived generally and purposefully (continued...)

[11] (...continued) from the common law tort of unfair competition, and its language parallels the protections afforded by state common law and statutory torts.") (citation omitted). Tortious interference with prospective economic advantage similarly sounds in tort, and other circuits have recognized copyright infringement as an intentional tort. *See, e.g., Bucklew v. Hawkins, Ash, Baptie & Co., LLP*, 329 F.3d 923, 931 (7th Cir. 2003) ("Copyright infringement . . . is an intentional tort.").

19